UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORINIA

KACY M.,[1]

Plaintiff,

v.

FRANK BISIGNANO, *Commissioner of Social Security*,

Defendant.

Case No.:  25cv1141-MSB

**ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION [ECF NO. 9]**

On May 5, 2025, Plaintif Kacy M. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final adverse decision by the Commissioner of Social Security ("Commissioner").  (ECF No. 1.)  Based on all parties' consent [see ECF Nos. 3, 5], this case is before the undersigned as presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Now pending before the Court is Plaintiff's Brief, claiming error by the Administrative Law Judge ("ALJ") who conducted the administrative hearing and issued the decision denying Plaintiff's application for

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

1

disability insurance benefits.  (ECF No. 9.)  The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative Record ("AR") [ECF No. 7], Plaintiff's Brief [ECF No. 9], and the Commissioner's Responsive Brief [ECF No. 11].  For the reasons set forth below, the Court **ORDERS** judgment be entered **REVERSING** the Commissioner's decision and **REMANDING** this matter for further administrative proceedings consistent with this Order.

## I.    PROCEDURAL BACKGROUND

On January 2, 2019, Plaintiff applied for disability insurance benefits under Titles II and XVIII of the Social Security Act, alleging disability beginning on September 15, 2017.  (AR 220–23.)  The Commissioner denied the claim initially on April 18, 2019, and again upon reconsideration on July 18, 2019.  (AR 123–26; 130–35.)  On September 7, 2019, Plaintiff sought an administrative hearing before an ALJ.  (AR 136–37.)  ALJ Andrew Verne held the first hearing on September 17, 2020, during which Plaintiff appeared with counsel; Plaintiff and vocational expert, Robin Scher, testified.  (AR 41–89.)  In a written decision dated November 19, 2020, the ALJ concluded Plaintiff had not been under a disability from September 15, 2017, through the date of decision.  (AR 18–40.)

On January 21, 2021, Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR 217–19.)  The Appeals Council denied the request for review on June 2, 2021.  (AR 6–11.)  Plaintiff then sought review by this Court on August 3, 2021.  (AR 1657–65.)  On December 6, 2022, the Court entered an Order granting the parties' joint motion to remand the matter for further administrative proceedings.  (AR 1666–71.)  On May 1, 2023, the Appeals Council effectuated the Order of this Court, vacating the Commissioner's decision and remanding for further proceedings.  (AR 1672–77.)

On remand, ALJ Andrew Verne conducted the second hearing on March 14, 2024, during which Plaintiff was represented by counsel.  (AR 1589–1627.)  Both Plaintiff and vocational expert, Doug Lear, testified.  (Id.)  In a written decision dated May 17, 2024, the ALJ denied Plaintiff's application, concluding that Plaintiff has not been under a disability from September 15, 2017, through June 30, 2022, the date she was last

2

25cv1141-MSB

insured.  (AR 1564–88.)  On May 24, 2024, Plaintiff requested review of the ALJ's decision.  (AR 1560.)  The Appeals Council once again denied Plaintiff's request for review on March 20, 2025, making the ALJ's decision final.  (AR 1548–54.)  See also 42 U.S.C. §405(g).  This timely civil action followed.

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ applied the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from September 15, 2017, through June 30, 2022, her date last insured.  (AR 1569.)  At step two, the ALJ found Plaintiff has the following severe impairments: peripheral nerve entrapment syndrome, mild degenerative disc disease, mild bilateral facet arthropathy, degenerative changes without neuroforaminal narrowing, cervical spine strain, postural dysfunction, pelvic floor dysfunction with pelvic adhesions, myofascial pain syndrome, post-traumatic stress disorder ("PTSD"), major depressive disorder, generalized anxiety disorder, and insomnia.  (AR 1570.)  The ALJ noted these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities.  (Id.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Commissioner's Listing of Impairments.  (AR 1570.)  Specifically, the ALJ found Plaintiff's physical impairments do not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)) or 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina).  (Id.)  See also 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 1.00.  Additionally, the ALJ concluded Plaintiff's mental impairments do not meet or medically equal the criteria of both paragraphs B and C of listing 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) or 12.15 (trauma- and stressor-related disorders).  (AR 1570–71.)  See also 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 12.00.

///

25cv1141-MSB

Ultimately, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to do the following:

> [P]erform light work . . . except [Plaintiff can] lift, carry, push, and pull 20 pounds occasionally, 10 pounds frequently; can stand and/or walk for 6 hours, sit for 6 hours, in an 8-hour workday with normal breaks; frequently climb ramps, stairs, ladders, ropes, scaffolds, balance, kneel, crouch, and crawl . . . [Plaintiff] is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with breaks every two hours, to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product . . . [Plaintiff] cannot perform highly time pressured tasks such that [Plaintiff] is limited to generally goal-oriented work, not time sensitive strict production quotas (that is, production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast paced); low-stress environment where there are few work place changes (i.e., the claimant would not have to switch from task to task) and [Plaintiff] has minimal decision-making capability (i.e., [s]he would be unable to exercise substantial discretion in carrying out work activities); and limited to reasoning level 1 work.

(AR 1572.)  In making this determination, the ALJ noted he considered all symptoms, medical opinions, and prior administrative medical findings.  (Id.)  The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 1573.)

At step four, the ALJ found Plaintiff could not perform her past relevant work as a masseuse; receptionist; cashier wrapper; sales representative, group; manager, beauty shop; or manager, health club.  (AR 1578–79.)  Finally, at step five the ALJ determined there are other jobs existing in significant numbers in the national economy that Plaintiff can perform considering her age, education, work experience, and RFC.  (AR 1579–80.)  The ALJ identified the following occupations: Garment Folder, Dictionary of Occupational Titles ("DOT") 323.687-014, light, unskilled, 39,000 jobs nationally; Tying

25cv1141-MSB

Machine Operator, DOT 929.685-014, light, unskilled, 66,000 jobs nationally; and Sorter, Agricultural Produce, DOT 529.687-186, light, unskilled, 32,000 jobs nationally.  (AR 1580.)  The ALJ noted that the vocational expert's testimony was useful in finding that an individual with Plaintiff's characteristics would be able to make a successful adjustment to other work that exists in significant numbers in the national economy.  (Id.)  Thus, the ALJ concluded Plaintiff has not been under a disability from September 15, 2017, through June 30, 2022.  (Id.)

### III.    DISPUTED ISSUE

Plaintiff raises one issue as grounds for reversal: whether the ALJ properly considered Plaintiff's subjective symptom testimony.  (ECF No. 9 at 9–22.)

### IV.    STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will only be disturbed if the final decision is not supported by substantial evidence or contains a legal error.  Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (internal citations omitted).  "Substantial evidence" is a "'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting T-Mobile S., LLC v. City of Roswell, Ga., 574 U.S. 293, 301 (2015)).  The Supreme Court has said substantial evidence means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).  The Ninth Circuit explained that substantial evidence is "more than a mere scintilla, but less than a preponderance."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)) (internal quotation marks omitted).

The reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from

25cv1141-MSB

the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)) (internal quotation marks omitted).  Overall, the substantial-evidence standard is "highly deferential." Kitchen v. Kijakazi, 82 F.4th 732, 738 (9th Cir. 2023) (citing Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015)).  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations omitted).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Thus, the court may overturn the ALJ's decision only if the ALJ's conclusions are not supported by substantial evidence or the ALJ applied the wrong legal standard.  See Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  However, the reviewing court "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

## V.    DISCUSSION

### A. Whether the ALJ Properly Considered Plaintiff's Subjective Symptom Testimony

#### 1. Summary of the parties' arguments

Plaintiff argues the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony.  (ECF No. 9 at 9–22.)  First, she contends the ALJ merely provided a "general discussion of the medical evidence" but did not offer a "legally sufficient rationale" for discounting Plaintiff's testimony.  (Id. at 12.)  Plaintiff notes the regulations prohibit rejecting a claimant's subjective symptom testimony solely based on objective medical evidence.  (Id. at 12–13 (citing 20 C.F.R. § 404.1529(c)(2).)  Further, Plaintiff contends the ALJ's general statement that Plaintiff's testimony is not entirely consistent with the objective medical evidence is not sufficient.

(Id. at 13–14.)  Second, Plaintiff contends the ALJ failed to identify "specific testimony" he discredited and failed to connect it to the medical evidence, which is legal error.  (Id.)

Third, Plaintiff contends the ALJ incorrectly concluded Plaintiff obtained only "conservative" treatment.  (Id. at 15–18.)  Plaintiff argues the ALJ cannot fault her for "failing to pursue non-conservative treatment options if none exist," and the ALJ failed to cite any evidence "that there was anything more the doctors wanted [Plaintiff] to do."  (Id. at 15.)  Moreover, Plaintiff argues that although the ALJ noted she received injections and took narcotic pain medication, he ignored the laparoscopy surgery she underwent.  (Id. at 16.)  Plaintiff cites Ninth Circuit cases holding that treatment with narcotic pain medication, injections, and surgery is not "conservative."  (Id.)  Next, Plaintiff contends the ALJ improperly discounted her testimony based on his finding that she did not undergo "escalating treatment" for her mental impairments.  (Id. at 16–17.)  However, Plaintiff highlights how it is common for individuals with chronic mental disease to have better days and worse days.  (Id. at 17.)  She also cites authority recognizing that the use of medications that modify behavior is not considered "conservative" treatment and contends she underwent the type of care that was required for her symptoms.  (Id. at 17–18.)

Plaintiff also maintains that the ALJ erred by finding the same objective medical evidence that established she had a severe impairment of myofascial pain syndrome was simultaneously insufficient to support her testimony about her pain in general.  (Id. at 18.)  Finally, Plaintiff argues that the ALJ did not cite her daily activities as a basis for discrediting her testimony; thus, any such argument by the Commissioner is not properly before the Court.  (Id. at 19.)  Nevertheless, Plaintiff asserts the limited activities the ALJ sporadically mentioned—such as engaging in sexual activity, changing positions during medical examinations, and performing home stretches—do not demonstrate an ability to sustain full-time work and would be an insufficient basis to reject her testimony.  (Id. at 20–22.)

///

25cv1141-MSB

In response, the Commissioner argues the ALJ's evaluation of Plaintiff's subjective symptom complaints is supported by substantial evidence and should be affirmed.  (ECF No. 11 at 2–9.)  The Commissioner contends the ALJ properly considered Plaintiff's testimony, found parts of it persuasive, and "incorporated a significant number of limitations into her RFC."  (Id. at 3.)  For example, to account for Plaintiff's physical symptoms, such as her neck and back impairments, the ALJ restricted her to "light work with various postural limitations."  (Id.)  To account for Plaintiff's mental limitations, the ALJ limited Plaintiff to "simple, routine, repetitive tasks, no time pressured tasks or quotas," and more.  (Id.)  However, the Commissioner contends the ALJ also reasonably found some of Plaintiff's "debilitating allegations were inconsistent with the medical evidence."  (Id. at 4.)  For example, the record demonstrated Plaintiff's symptoms were inconsistent with her complaints of back and neck pain and difficulty standing and walking, as physical examinations showed Plaintiff's gait was normal, she had full range of motion, and she could bend her knees without assistance.  (Id.)

Additionally, the Commissioner contends the ALJ "pointed to many of Plaintiff's specific complaints and then cited to portions of the objective medical evidence that were inconsistent with those allegations."  (Id. at 4–5.)  For example, the ALJ referenced Plaintiff's testimony that she was bedridden and required a walker but pointed to physical examinations showing she could change positions without difficulty, moved all extremities appropriately, and was advised to avoid bed rest.  (Id. at 5.)  Additionally, the ALJ highlighted inconsistencies between Plaintiff's generally normal mental status examination results and her allegations of debilitating mental impairments.  (Id. at 6–7.)  Lastly, the Commissioner argues the ALJ appropriately determined Plaintiff's treatment was "conservative" for both her physical and mental impairments.  (Id. at 6–8.)  The ALJ acknowledged Plaintiff was prescribed narcotic pain medication and received injections; however, she "subsequently relied on physical therapy, chiropractic adjustments, and massages to treat her pain symptoms" and the surgery she underwent was a diagnostic with "no concerning findings."  (Id. at 7–8.)  Similarly, the Commissioner contends the

25cv1141-MSB

ALJ appropriately relied on Plaintiff's lack of inpatient or emergency treatment when discounting her testimony related to her mental impairments.  (Id. at 8.)  Thus, the Commissioner argues that because the ALJ provided multiple, specific reasons supported by substantial evidence for discounting Plaintiff's subjective complaints, his decision should be affirmed.  (Id. at 8–9.)

### 2. Applicable law

When evaluating the credibility of a claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis.  See Johnson v. Kijakazi, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007).  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014–15.  The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain or other symptoms alleged, but only that it could have reasonably caused some degree of the symptoms.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504 F.3d at 1036).

Second, if the claimant meets the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so."  Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and convincing standard is the most demanding required in Social Security cases."  Revels, 874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15).  General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims.  See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005)

25cv1141-MSB

("The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints.")

"Because symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons.  See 20 C.F.R §§ 404.1529(c)(3), 416.929(c)(3).  Factors the ALJ may consider, in addition to objective medical evidence, include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Titles II & XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017).  The ALJ may also consider inconsistencies between Plaintiff's statements regarding pain and the medical evidence.  See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p, 2017 WL 5180304, at *8–9.

### 3. Plaintiff's testimony

#### a. Adult Function Report

Plaintiff completed an Adult Function Report on February 16, 2019.  (AR 277–284.)  Plaintiff summarized her conditions as follows: "I have chronic abdominal pain that is constant.  I don't get regular sleep, I struggle with PTSD, [a]nxiety, and [d]epression.  I have difficulty walking, standing[,] laying[,] or sitting for long periods of time.  My pain significantly effects [sic] my daily activities and overall health."  (AR 277.)  She explained that "sharp stabbing/burning" abdominal pain makes it difficult to sleep or complete activities.  (AR 278.)  Further, Plaintiff said she is "constantly fatigued and nauseous."  (Id.)  Plaintiff said, "I have lost almost all my previous level of functioning due to chronic pain symptoms."  (Id.)  Plaintiff reported difficulties with personal care activities, including dressing, bathing, grooming, eating, and using the toilet.  (Id.)

25cv1141-MSB

Further, Plaintiff noted she requires reminders for her personal care needs and to take medicine.  (AR 279.)  She does not prepare her own meals and requires assistance with most household tasks.  (Id.)  Plaintiff explained she does not go out, "[d]ue to my [h]igh levels of constant pain and mental state." (AR 280.)  Further, Plaintiff marked "[n]o" when asked if she can go out alone, stating the following reasons, "PTSD, [a]nxiety, and [d]ebilitating pain." (Id.)  Plaintiff marked that she does not drive, "[d]ue to panic attacks, PTSD, sharp stabbing pain, and fear of other [d]rivers." (Id.)

In a yes-or-no sequence of questions, Plaintiff marked "no" for the following tasks: pay bills, count change, handle a savings account, or use a checkbook or money orders.  (Id.)  She explained that due to the side effects of her medications and constant pain, she has "trouble [r]emembering things." (Id.)  Plaintiff reported that her hobbies previously included running, going to the gym, biking, swimming, attending church, participating in social events, and traveling to visit family.  (AR 281.)  She stated, "since I got hurt in September, I have been unable to do any of the things I once loved." (Id.)  Plaintiff added "[m]y depression, panic attacks, anxiety and social isolation make it difficult for me to have any social activities." (AR 282.)

In a check-box section, Plaintiff marked that her conditions affect the following abilities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, seeing, memory, completing tasks, concentration, understanding, and following instructions. (Id.)  Plaintiff reported only being able to walk in five-minute intervals before needing to stop and rest.  (Id.)  When asked about following instructions, Plaintiff said: "I have a hard time remembering what was said, and difficulty understanding what is being told to me." (Id.)  She said she does not handle stress well, stating it causes her "anxiety to increase." (AR 283.)  Plaintiff reported using a walker, wheelchair, cane, toilet riser, and shower seat, none of which were prescribed by a doctor.  (Id.)  Finally, Plaintiff wrote that she is taking Trazadone, Clonazepam, Bupropion, Tramadol, Amitriptyline, Cyclobenzaprine, Cyanocobalamin, Ibuprofen, and

25cv1141-MSB

Prazosin and experiencing side effects such as tiredness, drowsiness, foggy feeling, dizziness, memory loss, nausea, and heartburn.  (AR 284.)

### b.  Administrative hearings[2]

Plaintiff's first administrative hearing was September 17, 2020.  (AR 41–89.)  Plaintiff testified that she stopped working after getting in a "major motor vehicle accident" in September 2017, then was subsequently involved in another motor vehicle accident in June 2018 that "made [her] pain even worse."  (AR 52–53.)  Plaintiff explained that she tore her abdominal muscle and was diagnosed with various conditions, including nerve entrapment and neuropathy.  (AR 53.)  She said her abdominal pain has progressively worsened since then, describing it as "about a nine or ten."  (AR 54–55.)  Plaintiff testified to undergoing laparoscopy surgery in August 2020 and trying various prescription medications with minimal improvement.  (Id.)  Additionally, Plaintiff said she was prescribed a walker in 2018 because she had fallen.  (AR 56.)  In addition to the laparoscopy surgery, Plaintiff testified to undergoing "TAP [transverse abdominis plane] block procedures" in her abdomen.  (AR 57.)

Plaintiff had a second administrative hearing on March 14, 2024.  (AR 1589–1627.)  Plaintiff testified that she last worked full time in September 2017 as a stock concierge at the Westgate Hotel.  (AR 1595–96.)  When asked why she can no longer work, Plaintiff said "[d]ue to my limitations of pain, of not being able to stand for long periods of time, reach overheard, sit for long periods of time."  (AR 1596–97.)  She added, "I have a lot of PTSD, anxiety.  I don't sleep well because I have insomnia and nightmares, just a combination."  (AR 1597.)  Plaintiff testified she was last hospitalized in October 2020[3] for a laparoscopy surgery.  (AR 1598.)  Although the doctors went in suspecting Plaintiff might have endometriosis, "[they] found out that it was something

---

[2] The Court's analysis relies primarily on the most recent administrative hearing from March 14, 2024.  (AR 1595–96.)  However, the Court also briefly summarizes Plaintiff's September 17, 2020, administrative hearing, focusing on the initial onset of Plaintiff's subjective symptom complaints.

[3] It appears Plaintiff may be referring to the laparoscopy surgery that occurred in August 2020, not October 2020.  (AR 1872–75.)

25cv1141-MSB

completely different." (Id.)  Plaintiff testified she had nerve damage and her "organs were in the wrong place attached to my abdominal wall."  (Id.)  Otherwise, Plaintiff was hospitalized in June 2018 and September 2018 after the already discussed motor vehicle accidents.  (Id.)

Plaintiff testified she uses a walker and cane every day and has abdominal blinders.  (AR 1599.)  She explained she received multiple, unsuccessful block injections prior to her surgery.  (AR 1600.)  Further, she takes cyclobenzaprine, diazepam, and desvenlafaxine for her "pain, nerve pain, pelvic floor damage."  (AR 1601.)  Plaintiff explained, "[b]ecause of all the medications, with not being able to eat with them because my pain gets so high, I get really bad like nausea, and I throw up a lot."  (Id.)  Accordingly, Plaintiff takes ondansetron to control her nausea and vomiting.  (Id.)  Plaintiff stated the pain medications have mixed results: "some days they [help], some days they don't . . . usually I'm in pain throughout the day and some days it's higher than others, just depends on if I need to take more or less.  But nothing takes the pain away.  It's more or less just helping to manage the pain."  (Id.)

Due to pain, Plaintiff testified she can stand or walk for no more than ten to twelve minutes before needing to lay down for twenty to thirty minutes.  (AR 1602.)  She said she has difficulty sitting because of her pelvic floor dysfunction and nerve damage.  (Id.)  Plaintiff testified she has difficulty getting out of bed without pain and struggles with grooming, showering, dressing, and preparing food.  (AR 1603–04.)  Further, Plaintiff said she relies on her husband and friends to do chores around the home due to her debilitating pain.  (AR 1604.)  She explained that she is unable to stand long enough to do the dishes, cannot carry a laundry basket to the washer, and is unable to lift anything heavier than two to four pounds.  (Id.)  Plaintiff testified she spends a normal day journaling, meditating and caring for plants.  (Id.)  She uses voice-to-text to record entries in her journal and participates in Eye Movement Desensitization and Reprocessing ("EMDR") therapy, where her therapist encourages her to track her daily pain, mood levels, and trauma.  (AR 1605.)  Plaintiff said she spends approximately

25cv1141-MSB

fifteen minutes at one time on these activities because she experiences severe "pain spikes." (Id.) Plaintiff reported her pain is progressively worsening and now includes shooting sensations of numbness in her hands. (AR 1607.)

Regarding mental health treatment, Plaintiff testified she has been taking mental health medication since 2017 and has been treated by a psychiatrist for over a year. (AR 1599.) She has participated in mental health counseling once or twice per month since 2017. (AR 1600.) In addition, Plaintiff testified her medication hinders her memory, causing her to lose focus, feel groggy, and experience headaches. (AR 1605.) As a result, she frequently needs to lay down to avoid a "vertigo" feeling. (AR 1606.) Plaintiff said depending on her pain, she could be laying down for thirty minutes to two hours. (Id.) Plaintiff also reported getting "anxiety panic attacks," which are triggered by sound and noises. (Id.) Lastly, Plaintiff explained how her pain and medications prevent her from focusing on anything for more than ten to fifteen minutes. (AR 1607.)

### 4. Analysis

The Court now undertakes the two-step analysis to determine whether the ALJ properly discounted Plaintiff's testimony. See Johnson, 2022 WL 1553259, at *1; Lingenfelter, 504 F.3d at 1035–36. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thereby satisfying the first prong. (AR 1573.) See Vasquez, 572 F.3d at 591 (finding the ALJ satisfied step one where the "ALJ acknowledged that [plaintiff's] injuries 'could reasonably be expected to produce *some* of the pain and other symptoms alleged'") (emphasis in original) (internal citations omitted). Additionally, neither party alleges there is any evidence of malingering. (See ECF Nos. 9 & 11.) Thus, the ALJ may reject Plaintiff's testimony "only by providing specific, clear, and convincing reasons." See Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).

In addition to giving "clear and convincing" reasons for rejecting Plaintiff's testimony, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v.

14

Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing Reddick, 157 F.3d at 722).  Failure to do so is a harmful legal error, as it precludes the court from conducting a meaningful review of the ALJ's reasoning.  See Brown-Hunter, 806 F.3d at 492 ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'") (quoting Treichler, 775 F.3d at 1103).  Here, the Court finds that the ALJ failed to meet the demanding "clear and convincing" standard for several reasons.

### a. Specificity

As an initial matter, the ALJ failed to identify which of Plaintiff's statements he found not credible and thus did not provide the necessary information to allow for this Court's meaningful review.  See Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (internal citations omitted).  Instead, the ALJ generally explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence."  (AR 1573.)  This general, conclusory statement does not rise to the level of "specific, clear, and convincing" reasons for discounting a claimant's subjective testimony.  See, e.g., Treichler, 775 F.3d at 1103 (holding that a boilerplate introductory sentence falls short of "meeting the ALJ's responsibility" to discuss the objective evidence); Vasquez, 572 F.3d at 592 (finding that the "vague allegation that [Plaintiff's claims] were 'not consistent with the objective medical evidence'" was inadequate to reject Plaintiff's subjective testimony).

Following the boilerplate introduction, the ALJ devoted the next several pages to summarizing the medical evidence, medical opinions, and prior administrative medical findings.  (AR 1573–78.)  At no point did the ALJ identify which of Plaintiff's statements he found not credible or explain why.  (Id.)  The ALJ merely stated that he found, based on unspecified testimony and a general summary, that Plaintiff's testimony was

"inconsistent" with the objective medical evidence.  (AR 1574.)  The Court cannot "speculate as to the grounds for the ALJ's conclusions."  Brown-Hunter, 806 F.3d at 495.  Moreover, the Court is "constrained to review [only] the reasons the ALJ asserts."  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (internal citations omitted).  Because the ALJ failed to identify the specific testimony he found not credible and the specific evidence undermining Plaintiff's testimony, the Court is unable to accurately assess the adequacy of the ALJ's findings.  See Lambert, 980 F.3d at 1278 (holding that a "relatively detailed overview of [plaintiff's] medical history" was not the same as providing clear and convincing reasons for discounting plaintiff's testimony).  Nevertheless, the Court addresses each of the ALJ's purported reasons for discounting Plaintiff's testimony.

### b.  Objective medical evidence

First, the ALJ discounts Plaintiff's testimony because "the objective medical evidence generally does not support the alleged loss of function."  (AR 1574.)  An ALJ's identification of inconsistencies between a plaintiff's testimony and the objective medical evidence may be a clear and convincing reason for discounting testimony.  See, e.g., Ferguson v. O'Malley, 95 F.4th 1194, 1200 (9th Cir. 2024); Koch v. Berryhill, 720 F. App'x 361, 364 (9th Cir. 2017).  However, an ALJ cannot rely solely on objective medical evidence to discredit an individual's symptom testimony.  See 20 C.F.R § 404.1529(c)(2); SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

Based on the Court's thorough review of the record, it is evident that the ALJ selectively highlighted certain normal findings while ignoring others, which is impermissible.  Holohan, 246 F.3d at 1207 (finding error where the ALJ "selectively relied on some entries" while ignoring others showing different results).  For example, the ALJ emphasized treatment notes showing normal physical examination findings,

25cv1141-MSB

including normal range of motion, strength, tone of cervical and lumbar spines, motor strength of extremities, gait, station, etc.  (See AR 1573 (citing AR 436, 438, 506, 513, 519, 535, 671, 861, 916, 960, 1002, 1111, 1152–53, 1158, 1383, 1387, 1397, 1402, 1427, 1452, 1459).)  Yet, the ALJ underplayed abnormal findings within those same medical records, including abdominal distention [AR 861, 1874] and tenderness to palpation [AR 861, 869, 888, 891].  Although the ALJ briefly acknowledged Plaintiff exhibited some "[a]bnormal findings on physical examination," he did not explain how these findings were weighed against the "normal findings."  (See AR 1573.)

Similarly, with respect to Plaintiff's mental impairments, the ALJ cited mental status examinations showing Plaintiff "was alert and fully oriented, cooperative, pleasant and well groomed" and "exhibited a normal euthymic mood, normal affect, normal memory, a normal fund of knowledge, normal attention, normal concentration." (AR 1574 (citing AR 424, 469, 481, 513, 1002, 1044, 1054, 1153, 1382, 1386–87, 1497, 2103–04).)  In the same paragraph, the ALJ noted abnormal findings such as Plaintiff exhibiting a "sad mood and tearful, blunted, or constricted affect" and her diagnoses of depression, generalized anxiety disorder, PTSD, and insomnia.  (AR 1574 (citing AR 424, 469, 863, 1044, 1054, 1057, 1087, 1394, 1834, 1847)).)  However, the ALJ once again failed to explain why Plaintiff's "normal" mental findings outweighed her "abnormal" mental findings.  (See AR 1574.)

Additionally, the ALJ mischaracterized certain treatment notes by failing to consider them in the context of the entire record.  For instance, the ALJ discounted Plaintiff's testimony that she was "bedridden with the need for the use of a walker," citing treatment notes indicating Plaintiff could "change positions without difficulty during examinations" and Plaintiff "was advised to avoid bed rest."  (AR 1575 (citing AR 1162).)  However, a closer look reveals the medical provider advised against "bed rest lasting 4 days or longer" rather than complete avoidance of bed rest.  (AR 1158, 1162.)  An ALJ may not cherry-pick evidence that supports a finding of non-disability while ignoring other evidence that supports a finding of disability.  See, e.g., Jones v. O'Malley,

25cv1141-MSB

No. 23-16136, 2024 WL 3963835, at *2 (9th Cir. Aug. 28, 2024) (finding error where the ALJ relied on a "single medical note" rather than the full record); Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding error where the ALJ "cherry-picked" certain characterizations of symptoms without considering context).

Although the Commissioner raises inconsistencies to support the ALJ's non-credibility determination, the reviewing court may only review "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010 (citing Connett, 340 F.3d at 874). Like the district court in Lambert, the Commissioner's attempts to fill in the ALJ's reasoning by citing portions of the record is improper. 980 F.3d at 1278 (citing Brown-Hunter, 806 F.3d at 494) ("Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make," and the reviewing court is "constrained to review the reasons the ALJ asserts."). In sum, the ALJ erroneously highlighted normal findings while overlooking abnormal findings and mischaracterized certain treatment notes without examining their full context. While the Commissioner highlights certain inconsistencies between Plaintiff's testimony and the objective medical evidence, the Court must constrain its review to the reasons provided by the ALJ. Thus, the ALJ's cherry-picking of selective objective medical evidence is not a clear and convincing reason for discounting Plaintiff's testimony. See Diedrich v. Berryhill, 874 F.3d 634, 642 (9th Cir. 2017) (finding error where the ALJ cherry-picked the absence of certain symptoms rather than engaging in a "broader development").

### c. Assistive devices

Next, the ALJ discredited Plaintiff's subjective symptom testimony because "the record does not support the medical need for an assistive device." (AR 1575.) "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." Titles II & XVI:

25cv1141-MSB

Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, at *7 (S.S.A. July 2, 1996). Here, there is evidence that Plaintiff was prescribed a walker and used assistive devices regularly.  The ALJ's written decision explicitly notes that on July 19, 2019, Dr. Melissa Deer ordered a walker and abdominal binders.  (AR 1573 (citing AR 855).)  Additionally, Plaintiff was recorded using a walker in many treatment notes:

- July 2, 2020, and September 3, 2020— "Patient is unable to walk 1/2 mile [without] pain or use of a walker" [AR 2223, 2235];
- October 12, 2020— "[Pain] has caused her to fall a few times, so she is now walking with a walker"  [AR 1865];
- November 14, 2020— "pt found standing outside lobby with front wheel walker, can't sit for long periods of time" [AR 1847];
- December 1, 2020— "Here for new order for walker" [AR 2200];
- December 2, 2021, and May 4, 2021— "uses a walker to walk, used to use a cane" [AR 2042, 2080].

On December 1, 2020, Plaintiff's physician ordered durable medical equipment in the form of a walker.  (AR 2200–03.)  At the first administrative hearing on September 17, 2020, Plaintiff testified she used a "prescribed walker."  (AR 56.)  Likewise, at the administrative hearing on March 14, 2025, Plaintiff testified she used a walker, cane, and abdominal binders every day.  (AR 1599.)

Without providing explanation, the ALJ dismissed Plaintiff's testimony and the many treatment notes referencing her use of a walker and other assistive devices.  (AR 1574–75.)  The ALJ highlighted a few instances where Plaintiff exhibited a normal gait or walked without an assistive device and concludes that "[d]iagnostic imaging did not support the use of a prescribed assistive device."  (AR 1575.)  Once again, the Court finds the ALJ improperly cherry-picked favorable evidence without engaging in a broader development necessary to satisfy the "clear and convincing" standard. Diedrich, 874 F.3d at 642; Holohan, 246 F.3d at 1207 (finding error where the ALJ "selectively relied on some entries" while ignoring others).  Thus, Plaintiff's ability to

25cv1141-MSB

sometimes walk without an assistive device does not constitute a specific, clear, and convincing reason to discount her testimony.

### d. Conservative treatment

Finally, the ALJ discounted Plaintiff's testimony after concluding Plaintiff's treatment was conservative. (AR 1574–75.) Specifically, the ALJ noted "the record does not reflect escalating treatment modalities, such as assistive device usage, pain management, such as assistive device usage, pain management, recurrent emergency room visits, inpatient hospitalizations, intensive specialist care, or surgery to alleviate the claimant's alleged symptoms." (Id.) "The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms," is an important indicator of the intensity and persistence of an individual's symptoms. See 20 C.F.R. § 404.1529(c)(3). The Ninth Circuit has held that conservative treatment can be a basis for discounting a plaintiff's "testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (holding the use of solely over-the-counter medication to treat pain was "conservative treatment" the ALJ could reasonably rely on to discount Plaintiff's subjective testimony). However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." Revels, 874 F.3d at 667. Additionally, conservative treatment is not a proper basis for discrediting a plaintiff's testimony where there is no indication more aggressive treatment options are available. See Lapeirre-Gutt v. Astrue, 382 Fed. App'x 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist").

The record reflects Plaintiff attempted a wide array of treatments for her physical impairments, including: multiple rounds of abdominal nerve block injections [AR 862, 885, 896]; bilateral transverse abdominis place ("TAP") block and trigger point injections [AR 859, 869, 877, 903]; a diagnostic laparoscopy [AR 1854, 1870]; acupuncture [AR 2080, 2107, 2214]; chiropractic adjustments [AR 882, 2206]; pelvic physical therapy [AR 1867, 1874]; and pain medications such as naltrexone, cyclobenzaprine, bupropion,

prazosin, gabapentin, duloxetine, dicyclomine, and tramadol [AR 1865, 1889, 2206]. Notably, Plaintiff was forced to cease taking tramadol, an opioid, due to anaphylaxis. (AR 1573, 1854.)  Plaintiff's mental health treatment consisted of "medical management with a psychiatrist every two to three months and monthly counseling with a therapist." (AR 1574 (citing AR 632–57, 1040–1115, 2098–2219).)  To treat her depression, generalized anxiety disorder, PTSD, and insomnia, Plaintiff took numerous prescription medications, including: trazodone, prazosin, amitriptyline, wellbutrin, and klonopin.  (AR 1574 (citing AR 1054, 1102, 1357, 1364, 2104).)

Here, Plaintiff underwent surgery, injections, physical therapy, and various other treatments, as she searched for relief from persistent pain and other symptoms.  The Ninth Circuit has held that injections coupled with pain medication cannot be characterized as "conservative."  See, e.g., Garrison, 759 F.3d at 1015 n. 20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); Gilliland v. Saul, 821 Fed. App'x 798, 799 (9th Cir. 2020) (finding treatment consisting of pain medications and injections was not conservative). Similarly, the Ninth Circuit has held that multiple prescription psychiatric medications is not "limited and conservative" treatment.  Drawn v. Berryhill, 728 F. App'x 637, 642 (9th Cir. 2018) (quoting Parra, 481 F.3d at 750–51)).  There is no indication that other non-conservative treatments were available or appropriate for Plaintiff.  See Lapeirre-Gutt, 382 Fed. App'x at 664; Salazar v. O'Malley, No. 24cv1432-WHQ (BLM), 2025 WL 1682891, at *5 (S.D. Cal. June 16, 2025), report and recommendation adopted sub nom. Carlos S. v. Comm'r of Soc. Sec., No. 24cv1432-WQH (BLM), 2025 WL 1920150 (S.D. Cal. July 10, 2025) (finding "conservative" treatment was not a clear and convincing reason where the ALJ "did not identify any more aggressive treatments that Plaintiff should have pursued").  Therefore, Plaintiff's allegedly conservative treatment does not constitute a specific, clear, and convincing reason to discredit her testimony.

///

///

25cv1141-MSB

## VI.    CONCLUSION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id.  The reviewing court has discretion in determining whether to remand for further proceedings or award benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

In this case, Plaintiff asks this Court to reverse the ALJ's decision and "remand for the correction of the legal errors." (ECF No. 9 at 23.)  As discussed above, the ALJ erred in two distinct ways.  First, the ALJ failed to specifically identify which of Plaintiff's statements he found not credible or explain why.  Holohan, 246 F.3d at 1208.  Second, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record, to support his non-credibility determination.  Brown-Hunter, 806 F.3d at 494.  The Court finds that remand for further administrative proceedings is appropriate because additional proceedings could remedy the defects in the ALJ's decision.  Specifically, the Court **REMANDS so that the ALJ may reexamine** Plaintiff's subjective pain and symptom testimony and the applicable clear and convincing standard, in a manner consistent with this Order.  For the foregoing reasons, the Court **ORDERS** that judgement be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

25cv1141-MSB

**IT IS SO ORDERED.**

Dated:  May 29, 2026

Honorable Michael S. Berg
United States Magistrate Judge

25cv1141-MSB